**SO ORDERED.**

**SIGNED this 28 day of September, 2018.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WILMINGTON DIVISION

IN RE:

WAYNE BAILEY, INC.                          CASE NO. 18-00284-5-SWH
                                            CHAPTER 11
    DEBTOR

## ORDER ALLOWING OBJECTION TO PACA CLAIM OF SCOTT FARMS, INC.

The matter before the court is the Objection to PACA Claim of Scott Farms, Inc. filed by the Debtor on June 4, 2018, Dkt. 367 (the "Objection"). A response to the Objection was filed by Scott Farms, Inc. ("Scott Farms") on June 25, 2018, Dkt. 423. A hearing was held in Raleigh, North Carolina on July 24, 2018, at which the court took the matter under advisement and invited the parties to file supplemental memoranda. After a review of the case record, the parties' arguments, and post-hearing memoranda, the Objection will be allowed.

### BACKGROUND

Wayne Bailey, Inc. (the "debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on January 21, 2018 (the "Petition Date"). The debtor is a sweet potato

<strong style="color:red">EXHIBIT A</strong>

grower, packer, and shipper based in Chadbourn, North Carolina. As part of its business operation, the debtor regularly purchases sweet potatoes from local growers, packs the purchased potatoes, and sells and ships them to wholesale and retail vendors.

Many of the growers who sell potatoes to the debtor are licensed produce sellers pursuant to the Perishable Agricultural Commodities Act ("PACA"), which governs the sale of produce in the United States and is codified at 7 U.S.C. § 499e(c). Under PACA, upon the sale of produce, a statutory trust is imposed upon the purchased "perishable agricultural commodities" and all receivables and proceeds thereof. As a result, the debtor contended that many of the sellers in this case held claims subject to PACA's statutory trust provisions, such that a separate PACA-specific claims process was necessary.

The court entered a consent order on March 5, 2018, Dkt. 139, which required any unpaid produce "seller or supplier of the Debtor alleging rights under [PACA]" to file a proof of claim using a specific form on or before April 16, 2018. Scott Farms timely filed a PACA proof of claim on April 16, 2018, Claim No. 87-1 (the "Proof of Claim").

## ISSUES AND PARTIES' POSITIONS

In the Proof of Claim, Scott Farms initially asserted a claim in the amount of $154,031.47 and contended that this full amount was entitled to statutory trust protection pursuant to PACA. In the Objection, the debtor contended that several of the invoices attached to Scott Farms' Proof of Claim listed payment terms that exceeded the statutory maximum.

Although the Objection originally disputed the PACA eligibility of Scott Farms' entire claim, the parties agreed to an allowed PACA claim in the amount of $39,000, to which a setoff in the amount of $33,183 will be applied. Remaining for the court's determination is the PACA

eligibility of two invoices: (1) Invoice #21729 in the amount of $77,998 and (2) Invoice # 21730 in the amount of $38,400 (collectively, the "Disputed Invoices").

Invoice #21729 represents four potato "pack outs," i.e. when the debtor accepted and received Scott Farms' potatoes, occurring on September 15, September 16, September 18, and September 19, 2017. In total, Scott Farms billed the debtor for 252 bins of potatoes via Invoice #21729 for the total sum of $77,998.

Invoice #21730 represents four additional potato pack outs, occurring on September 22, September 28, October 3, and October 10, 2017. In total, Scott Farms billed the debtor for 127 bins of potatoes via Invoice #21730 for the total sum of $38,400.

Many, if not all, of the facts surrounding the two Disputed Invoices and the relationship between the parties are not in dispute:

> (1) Both invoices contain the language required by 7 C.F.R.§ 46.46 (f)(4);
> (2) The sweet potatoes provided by Scott Farms were received and accepted by Wayne Bailey on the dates set forth on Wayne Bailey's Exhibit #1, i.e., Invoice # 21729 was packed between September 15 and September 17, 2017, and Invoice # 21730 was packed between September 22 and October 10, 2017;
> (3) There was no written agreement between the parties modifying the statutory 10-day payment period set forth in 7 C.F.R § 46.2(aa)(5);
> (4) The parties had an oral agreement that payment would be received by Scott Farms from the debtor within thirty days of receipt of the sweet potatoes;
> (5) The language "Net Due November 20, 2017" appears in the comment section of both Disputed Invoices.

Scott Farms contends that the invoices in dispute are PACA eligible because they: (1) give Wayne Bailey timely notice of the supplier's intent to preserve its PACA trust rights and (2) the parties' agreed-upon payment term of thirty days is within the statutory limit.

Alternatively, Scott Farms argues that if the "Net Due November 20, 2017" language is to be considered as relevant to PACA rights, it constitutes a valid post-default payment arrangement,

3

which would not exclude the Disputed Invoices from PACA eligibility. Wayne Bailey does not admit any post-default agreement applicable to the invoices in question. To the contrary, Wayne Bailey presents two arguments: (1) the payment term listed on the Disputed Invoices, i.e. November 20, 2017, directly conflicts with the parties' agreed-upon payment term of "net 30 days," such that the Disputed Invoices are ineligible for PACA protection pursuant to 7 U.S.C. § 499e(c)(3); and (2) by virtue of the November 20, 2017 due date on the Disputed Invoices, they are ineligible for PACA protection, since the potatoes were packed out more than thirty days prior to November 20, 2017.

## DISCUSSION

A. PACA, Generally

PACA, enacted by Congress in 1930, exists "to encourage fair trading practices in the marketing of perishable commodities by suppressing unfair and fraudulent business practices in marketing of fresh and frozen fruits and vegetables . . . and providing for collecting damages from any buyer or seller who fails to live up to his contractual obligations." H.R. Rep. No. 543, 98th Cong., 2d Sess. 3 (1984). To this end, the statute creates, "immediately upon a delivery [of produce], a nonsegregated floating trust in favor of sellers on the perishable commodities sold and the products and proceeds derived from the commodities." *Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 410 (5th Cir. 2003). PACA requires a "produce dealer [to hold] produce-related assets as a fiduciary in statutory trust until full payment is made to the seller." *Bowlin & Son, Inc. v. San Joaquin Food Serv. (In re San Joaquin Food Serv.)*, 958 F.2d 938, 939 (9th Cir. 1992).

PACA is remedial in nature. *See United Potato Co., Inc. v. Burghard & Sons, Inc.*, 18 F.Supp.2d 894, 899 (N.D. Ill. 1998) (explaining that "PACA was meant to add a remedy beyond

4

those already provided by the states and other statutes"). Where a seller is not promptly paid for the produce it delivers, the floating trust imposed by PACA "gives sellers of perishable agricultural commodities a right of recovery that is superior to the right of all other creditors, including secured creditors." *Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 595 (4th Cir. 2010); *see also In re Superior Tomato-Avocado, Ltd.*, 481 B.R. 866, 869 (Bankr. W.D. Tex. 2012) (citations omitted) (explaining that PACA effectively grants a produce seller "a 'superpriority' right [to payment] that trumps the rights of a buyer's other secured and unsecured creditors"); *In re Yarnell's Ice Cream Co., Inc.*, 469 B.R. 823, 827 (Bankr. E.D. Ark. 2012) (noting that "sellers protected by PACA are . . . elevated to a priority position above secured creditors").

In exchange for the tremendous protection it affords produce sellers, PACA demands strict compliance with the Act's statutory provisions and associated regulations promulgated by the United States Department of Agriculture ("USDA"). *See Paris Foods Corp. v. Foresite Foods, Inc.*, 278 Fed.Appx. 873, 874 (11th Cir. 2008) ("Strict compliance with PACA is required to preserve one's rights in a PACA statutory trust"); *Am. Banana Co., Inc. v. Republic Nat'l Bank of N.Y.*, 362 F.3d 33, 35 (2d Cir. 2004) ("Strict eligibility requirements accompany the extraordinary protection afforded by PACA's trust provision"); *In re John DeFrancesco & Sons, Inc.*, 114 B.R. 335, 338 (D. Mass. 1990) ("In order to preserve its PACA trust benefits . . . [a seller] must prove it strictly complied with all the necessary statutory requirements").

Importantly, PACA prescribes permissible payment terms between a produce seller and a produce buyer. Because the statute is intended to protect the sale of produce on a short-term credit basis, the default payment period, contained in regulations promulgated by the Secretary of Agriculture, is ten days. 7 C.F.R. § 46.2(aa)(5). However, the maximum time for payment to which

5

a seller can agree in writing and still be eligible for PACA protection is thirty days after acceptance of the commodities. 7 C.F.R. § 46.46(e)(2).

The statute also requires a produce seller to timely notify a produce buyer of its intent to preserve PACA trust rights. 7 U.S.C. § 499e(c)(3)–(4). The regulations set forth, in detail, the methods by which a seller may submit such a notice and the required contents of the notice. *See* 7 C.F.R. 46.46(f). A notice to preserve PACA rights must be sent "within thirty calendar days" after the expiration of the payment term prescribed by 7 C.F.R. § 46.2(aa) or the expiration of the payment term agreed to by the parties in writing. 7 U.S.C. § 499e(c)(3).

B. Existence of a Post-Default Agreement

The first question the court must resolve is whether, in fact, a *post-default* agreement regarding payment existed between the parties. In 2011, the PACA regulations were revised to eliminate the application of the 30-day maximum repayment period to post-default agreements. *See John B. Ordille, Inc. v. Lenny Perry's Produce, Inc.*, No. 12-MC-54S, 2012 WL 5499652, at *3 (W.D.N.Y. Nov. 12, 2012) (explaining that "the Secretary of Agriculture amended its PACA regulations to clarify that the 30-day maximum payment period requirement of 7 C.F.R. § 46.46(e)(2) applies to pre-transaction agreements only"); *see also* 76 Fed. Reg. 20217 (Apr. 12, 2011) ("it is our interpretation that § 46.46(e)(2) . . . addresses pre-transaction agreements only").[1] Prior to the revision, courts had applied the 30-day maximum to post-default situations. *See, e.g.*, *Am. Banana Co., Inc. v. Republic Nat'l Bank of N.Y.*, 362 F.3d 33, 45 (2d Cir. 2004) (holding that

---

[1] The USDA differentiated between "pre-transaction" agreements and post-default agreements in its comments to the amended regulations. However, the comments do not address the situation at bar, i.e. a post-transaction but pre-default agreement. The court perceives that the reason for the revision was to allow sellers to make post-default agreements for payment without losing PACA protection; not to offer protection for pre-default agreements that included payment terms exceeding thirty days.

6

"§ 46.46(e)(2) of the PACA regulations [the 30-day maximum] to be applicable to post-default as well as pre-transaction agreements").

In this case, Invoice #21729 is dated October 27, 2017, but represents potato pack outs from September 15 to September 19, 2017. Invoice #21730 is dated October 30, 2017 and represents pack outs from September 22 to October 10, 2017. No other invoices representing those pack outs were introduced into evidence by either party, and no pack out slips were introduced into evidence. Scott Farms contends that default occurred when it was not paid in full upon the expiration of the parties' known payment term following pack outs of the potatoes. Assuming that the parties' oral agreement for a 30-day payment term applies, Scott Farms alleges that payment in full on the potatoes was due on October 15, October 16, October 18, October 19, October 22, October 28, November 2, and November 9, and that Wayne Bailey was in default when it did not remit full payment on those dates, i.e. thirty days after each respective pack out.

Based on the above-listed dates, Scott Farms contends that an email exchange between the parties dated November 6, 2017 constitutes a valid post-default agreement. The email is from Kim Scott, Office Manager of Scott Farms, to Linda Gore, the Accounts Payable Clerk at Wayne Bailey. In the emails, the parties discuss amounts owed to each other and allegedly agree to extend payment terms to November 20, 2017. The timing of this email exchange, when compared to the invoice dates, is suspect. If the parties agreed to a payment term extension of November 20 in an email on November 6, how and why did Scott Farms list the November 20 payment term on its invoices dated October 27 and October 30? No party introduced evidence that Wayne Bailey knew what amounts it owed Scott Farms until the October 27 and October 30 invoices were delivered. In short, the invoice evidence does not support Scott Farms' position that the November 20, 2017 due date noted on the Disputed Invoices represents a post-default agreement. The existence of a

7

post-default agreement between the parties therefore has not been proven by Scott Farms, and the court must therefore consider whether the November 20, 2017 notation renders the Disputed Invoices ineligible for PACA protection.

C. Invoice Payment Terms

The court is faced with an issue of first impression in this circuit, and the parties cite cases that do not cover the factual situation presented in this case: no written agreement, but an oral agreement for payment within thirty days, i.e., within the statutory maximum, and a due date written on the invoice that exceeds the statutory maximum.

To summarize, there are essential two requirements for preservation of PACA protection: (1) a timely notice must be given and (2) payment terms may not exceed thirty days from the acceptance of goods. The timeliness of a supplier's notice, i.e. the first requirement, necessarily depends on the underlying payment term, i.e. the second requirement, as the notice must be delivered to the purchaser within thirty days of the expiration of that term. 7 U.S.C. § 499e(c)(3). This case involves both requirements. The court will first consider the timeliness of Scott Farms' notice.

Scott Farms contends that the court should acknowledge the parties' oral 30-day payment term agreement in calculating the timeliness of the PACA notice. However, the statutory scheme does not recognize oral agreements in calculating PACA notice periods. 7 U.S.C. § 499e(c)(3). The clear language of the statute requires notice within the 10-day period set forth in the regulations or such other time as is agreed to by the parties *in writing*.

In this case, the invoice notice was given within the time period prescribed by the statute and regulations for most, but not all, of the transactions. Since there was no written agreement

8

modifying the statutory 10-day payment term, the statute required the invoice notices to be sent within thirty days after the expiration of the statutory default 10-day period.[2]

Invoice #21729, dated October 27, 2017, covers pack outs on September 15 and 16, 2017. That invoice is dated more than forty days after those pack outs, and thus is untimely as to those two transactions. As a result, the sums of $21,068.00 (the amount due for potatoes packed on September 15, 2017) and $22,297.00 (the amount due for potatoes packed on September 16, 2017) must be excluded from PACA protection. The notice set out for the other transactions covered by the Disputed Invoices is timely.

The court must next consider whether the payment terms listed on the Disputed Invoices exceeded the 30-day maximum prescribed by 7 C.F.R. § 46.46(e)(2). Courts are split over the effect of an oral agreement regarding payment terms on PACA eligibility. Some have held that the oral agreement has no legal significance and thus does not negate eligibility. *See, e.g.*, *In re Atlanta Egg & Produce, Inc.*, 321 B.R. 746 (N.D. Ga. 2005); *Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777, 781 (8th Cir. 1991) (finding that "oral agreements have no effect on produce sellers' trust protection"). Other courts have held that oral agreements that exceed the 30-day statutory maximum invalidate PACA protection. *See Am. Banana Co., Inc.* at 47 (finding that where "a seller agrees — orally or in writing — to a payment period exceeding thirty days, it forfeits trust protection"). Others still, hold that an oral agreement does not invalidate eligibility if it is within the maximum period. *See, e.g.*, *Produce Alliance v. Let-Us Produce*, 776 F.Supp.2d 197, 207 (E.D. Va. 2011) (concluding that "non-conforming agreements to extend payment terms for more than 10 days, but in no case more than 30 days, do not invalidate . . . otherwise valid PACA trust

---

[2] The Disputed Invoices were untimely as to the September 15, 2017 and September 16, 2017 pack outs regardless of whether the statutory 10-day payment term is imposed by the court or the "Net Due November 20, 2017" is recognized as a valid, binding payment term.

9

rights"). Finally, many courts have held that a written agreement is not a precondition of trust entitlement. *See, e.g.*, *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 203 (3d Cir. 1998) (noting that the "plain language [of the PACA regulations] does not provide . . . that a written agreement is a precondition of being entitled to the statutory trust benefits").

In this case, the court is persuaded by the decisions which hold that the existence of an oral payment arrangement does not invalidate PACA protection, in and of itself, but merely goes to the enforceability of the agreement. *See Stowe Potato Sales, Inc. v. Terry's, Inc.*, 224 B.R. 329 (W.D. Va. 1998); *Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777 (8th Cir. 1991). Therefore, the fact that the parties orally agreed to 30-day terms does not result in an waiver of PACA trust rights as applied to the Disputed Invoices. But the inquiry does not end there. The final question for the court to consider is whether a pre-default notation on an invoice setting forth a due date in excess of thirty days from the date of receipt and acceptance of the sweet potatoes invalidates PACA eligibility.

With no written pre-transaction agreement modifying the statutory payment terms, the court would imply the 10-day statutory term *if there were no contradictory payment terms on the invoice notice*. But that is not the case at bar. A payment term is in fact noted on the Disputed Invoices: "Net Due November 20, 2017." This payment term is clearly exceeds the statutory maximum of thirty days based on the Disputed Invoices' pack out dates set forth on debtor's Exhibit 1. *Cf. In re Atlanta Egg & Produce, Inc.*, 321 B.R. 746 (N.D. Ga. 2005) (finding that sellers preserved their PACA trust benefits via statutory invoice notice where no oral or written regarding payment terms existed and invoices did not list a payment term). In this case, the November 20, 2017 payment term clearly exceeds the thirty day maximum imposed by the relevant regulations, such that it invalidates the PACA eligibility of the Disputed Invoices in question.

10

Although not exactly aligned, the facts and finding in *Belair Produce Co., Inc. v. Mixt Greens Inc.*, No. ELH-12-299, 2012 WL 5199421 (D. Md. Oct. 18, 2012) are instructive. In *Belair*, the court found that the parties had entered into a written agreement to modify the payment term to thirty days but included the notation "10 Day EOM" on its invoices. Because there was a pre-transaction written agreement to modify the terms that were not included on the invoice, the court found that the seller had lost the protection of the PACA trust. *See also Overton Distributors, Inc. v. Heritage Bank*, 340 F.3d 361 (6th Cir. 2003) (seller included a 40-day payment term on its invoices and therefore failed to preserve PACA trust benefits). The *Belair* court further explained that "even if there had not been an agreement to a different payment term . . . the inclusion of . . . the 10 Day [end of month] term, by itself, violated PACA and deprived Belair of trust protection." *Id.* at 6.

In this case, there was no written agreement to alter the payment terms. Rather, only an oral agreement to a 30-day payment term existed between the parties. However, this 30-day term clearly and directly conflicts with the "Net Due November 20, 2017" term listed on the invoices in question. The fact that the agreement between the parties to extend the payment term to thirty days was oral, rather than written, should not change the outcome. *Id.* Where parties' agreed-upon payment terms and listed invoice payment terms conflict, and when those payment terms exceed the 30-day maximum, PACA trust eligibility is invalidated. 7 U.S.C. § 499e(c)(3).

## CONCLUSION

For the reasons stated above, the Objection of the debtor to the PACA claim of Scott Farms is ALLOWED. Scott Farms shall have an allowed PACA claim in the amount of $39,000, subject

11

to a setoff by the debtor in the amount of $33,184. Scott Farms shall also have an allowed general unsecured claim in the amount of $116,398.

**END OF DOCUMENT**