**SO ORDERED.**

**SIGNED this 1 day of February, 2019.**

_Stephani W. Humrickhouse_
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

IN RE:

**WAYNE BAILEY, INC.**

      DEBTOR

CASE NO. 18-00284-5-SWH

CHAPTER 11

### ORDER ALLOWING OBJECTION TO PACA CLAIM
### OF KORNEGAY FAMILY PRODUCE, LLC

The matter before the court is the Objection to PACA Claim of Kornegay Family Produce, LLC filed by the debtor on June 6, 2018, Dkt. 386 (the "Objection"). A response to the Objection was filed by Kornegay Family Produce, LLC ("Kornegay") on July 6, 2018, Dkt. 490 (the "Response"). A hearing was held in Raleigh, North Carolina on August 28, 2018, at which the court took the matter under advisement and invited the parties to file supplemental memoranda. Kornegay filed a post-hearing memorandum on October 11, 2018, Dkt. 674 (the "Memorandum"). After a review of the case record and consideration of the parties' arguments, the Objection will be allowed.

## BACKGROUND

Wayne Bailey, Inc. (the "debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on January 21, 2018 (the "Petition Date"). The court issued a Notice of Chapter 11 Bankruptcy Case on the Petition Date, Dkt. 2, which established a deadline of May 29, 2018 for the filing of claims by non-governmental creditors in this case (the "Claims Bar Deadline").

The debtor is a sweet potato grower, packer, and shipper based in Chadbourn, North Carolina. As part of its business operation, the debtor regularly purchases sweet potatoes from local growers, packs the purchased potatoes, and sells and ships them to wholesale and retail vendors. Many of the growers who sell potatoes to the debtor are licensed produce sellers pursuant to the Perishable Agricultural Commodities Act ("PACA"), which governs the sale of produce in the United States and is codified at 7 U.S.C. §§ 499a–499t. Under PACA, upon the sale of produce, a statutory trust is imposed upon the purchased "perishable agricultural commodities" and all receivables and proceeds thereof. As a result, the debtor contends that many of the sellers in this case hold claims subject to PACA's statutory trust provisions, such that a separate PACA-specific claims process was necessary.

A. Procedural History

Based on the large number of anticipated PACA claims in the case, the court entered a consent order on March 5, 2018, Dkt. 139 (the "Consent Order"), which required any unpaid produce "seller or supplier of the debtor alleging rights under [PACA]" to file a proof of claim using a specific form on or before April 16, 2018 (the "PACA Claim Deadline"). Kornegay did not file a PACA proof of claim on or before April 16, 2018; rather, it timely filed a non-PACA

proof of claim on May 29, 2018 before the Claims Bar Deadline expired. See Proof of Claim No. 123-1.

Kornegay filed a motion to convert its informal claim to a formal PACA claim on May 31, 2018, Dkt. 358 (the "Motion to Convert"). In the Motion to Convert, Kornegay alleged that it did not receive the Consent Order and was therefore unaware of the special PACA claims procedure and the PACA Claim Deadline. Kornegay further contended that it timely submitted an informal PACA claim on April 16, 2018 to counsel for the debtor in the form of a letter.[1] Based upon the proffer by counsel for Kornegay, the court found excusable neglect and orally granted the Motion to Convert at the August 28, 2018 hearing. Based on this oral ruling, the court deemed Kornegay's Proof of Claim to be a timely filed, formal PACA claim (the "Amended PACA Claim")[2] as required by the Consent Order, and Kornegay's Amended PACA Claim is therefore properly before the court.

B. Factual Background

Kornegay grew and sold ten loads of sweet potatoes to the debtor during the period of September 2016 to December 2016. Kornegay alleges, and the debtor does not dispute, that the parties **orally** agreed to extend the applicable payment term from ten days to thirty days prior to the 2016 transactions. Following each individual transaction, Kornegay issued a separate invoice

---

[1] Kornegay sent the letter documenting its PACA claim to counsel for the debtor and special PACA counsel for the debtor on April 16, 2018 via certified mail. Neither counsel for the debtor nor special PACA counsel for the debtor disputed receipt of Kornegay's letter, and both parties were therefore on notice of Kornegay's PACA claim by the PACA claim deadline.

[2] As was stated at the August 28, 2018 hearing, the court will treat Kornegay's April 16, 2018 letter, its contents, and its attachments as evidence of Kornegay's PACA claim. The Amended PACA claim has been designated on the Proof of Claims Register as Claim No. 123-2.

3

to the debtor (collectively, "Invoices").  The Invoices stated that the applicable payment term was "Net 30," contained a notice of reservation of PACA rights as prescribed by 7 U.S.C. § 499e(c)(4), and provided that "past due invoices are subject to 1.5% interest per month."

## ISSUES AND PARTIES' POSITIONS

In its PACA Claim, filed on May 29, 2018 (Claim No. 123-1), Kornegay initially asserted a claim in the amount of $52,184.29 and contended that this full amount was entitled to statutory trust protection pursuant to PACA.  Kornegay's Amended PACA Claim (Claim No. 123-2) asserts a PACA claim in the amount of $53,428.23.  In its Objection, the debtor contends that the Invoices provided for payment terms in excess of the statutory maximum, such that Kornegay's claims are not entitled to PACA trust protection.  Although the debtor's Objection originally disputed the PACA eligibility of Kornegay's entire claim, the parties agreed to an allowed PACA claim in the amount of $30,308.53 and agreed that an additional sum of $8,201.99 should not be afforded PACA protection but be allowed as an unsecured claim. Remaining for the court's determination is the PACA eligibility of three invoices:  (1) Invoice #17362 in the amount of $5,224.16, which lists a ship date of August 2, 2016 and an invoice date of September 20, 2016; (2) Invoice #17376 in the amount of $5,072.00, which lists a ship date of August 10, 2016 and an invoice date of September 20, 2016; and (3) Invoice #17442 in the amount of $4,422.84, which lists a ship date of September 21, 2016 and an invoice date of November 12, 2016 (collectively, the "Disputed Invoices").[3]

---

[3] The amount represented by the three remaining invoices in dispute is $14,719.00.  Unfortunately, there is a $198.71 discrepancy between the amount set out on the Amended PACA Claim after deduction of previously resolved invoices and the total of the remaining disputed invoices: $53,428.23 - $30,308.53 - $8,201.99 = $14,917.71, as opposed to $14,719.00.

4

Kornegay contends that the Disputed Invoices are PACA eligible because: (1) the parties orally or implicitly agreed to a 30-day payment term, which is within the statutory limit; and (2) based on a 30-day payment term, the dates of the Disputed Invoices gave the debtor timely notice of Kornegay's intent to preserve its PACA trust rights as required by 7 C.F.R. § 46.2(aa).[3] Kornegay further contends that a grower need only *substantially*, rather than *strictly*, comply with PACA to enjoy the benefits of the statutory trust.

To the contrary, the debtor asserts that the parties did not have any *written* pre-transaction, pre-default agreement, and as a result, the court must impose the statutory default payment term of ten days. Using a ten-day payment term, the debtor contends the notice provided by the Disputed Invoices was untimely.

Accordingly, two issues are before the court: (1) whether a pre-transaction, pre-default **oral** agreement or "course of dealings" between parties is sufficient to extend a PACA payment term; and (2) whether Kornegay timely sent the Disputed Invoice, which contained the required PACA language.

---

[3] In its post-hearing Memorandum, Kornegay set forth a different factual situation and presented an entirely different legal theory of relief. Specifically, Kornegay asserted that the potatoes represented in two of the three Disputed Invoices were sold on a consignment basis, such that the applicable payment term is "within 10 days after the date of final sale with respect to each shipment, or within 20 days from the date the goods are accepted at destination, whichever comes first." 7 C.F.R. § 46.2(aa)(1). Kornegay also alleged that the Disputed Invoices were for "pickout potatoes," which are not sold in a conventional market and are commonly sold via consignment.

These specific factual allegations were not asserted at the hearing and were not raised in any pleading filed prior to the August 28, 2018 hearing. At the hearing, counsel for Kornegay noted that Kornegay frequently waited for pricing information following the debtor's receipt of potatoes but did not otherwise assert that a consignment relationship existed. Further, the documents attached to the Amended PACA Claim and presented at the hearing do not evidence a consignment relationship. Accordingly, the court will not consider Kornegay's newly asserted position and will instead consider only its position taken at the August 28, 2018 hearing.

**DISCUSSION**

A. PACA, Generally

PACA, enacted by Congress in 1930, exists "to encourage fair trading practices in the marketing of perishable commodities by suppressing unfair and fraudulent business practices in marketing of fresh and frozen fruits and vegetables . . . and providing for collecting damages from any buyer or seller who fails to live up to his contractual obligations." H.R. Rep. No. 543, 98th Cong., 2d Sess. 3 (1984). To this end, the statute creates, "immediately upon a delivery [of produce], a nonsegregated 'floating' trust in favor of sellers on the perishable commodities sold and the products and proceeds derived from the commodities." *Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir. 2003). PACA requires a "produce dealer [to hold] produce-related assets as a fiduciary in statutory trust until full payment is made to the seller." *Bowlin & Son, Inc. v. San Joaquin Food Serv. (In re San Joaquin Food Serv.)*, 958 F.2d 938, 939 (9th Cir. 1992).

PACA is remedial in nature. *See United Potato Co., Inc. v. Burghard & Sons, Inc.*, 18 F.Supp.2d 894, 899 (N.D. Ill. 1998) (explaining that "PACA was meant to add a remedy beyond those already provided by the states and other statutes"). Where a seller is not promptly paid for the produce it delivers, the floating trust imposed by PACA "gives sellers of perishable agricultural commodities a right of recovery that is superior to the right of all other creditors, including secured creditors." *Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 595 (4th Cir. 2010); *see also In re Superior Tomato-Avocado, Ltd.*, 481 B.R. 866, 869 (Bankr. W.D. Tex. 2012) (citations omitted) (explaining that PACA effectively grants a produce seller "a 'superpriority' right [to payment] that trumps the rights of a buyer's other secured and unsecured creditors"); *In re*

6

*Yarnell's Ice Cream Co., Inc.*, 469 B.R. 823, 827 (Bankr. E.D. Ark. 2012) (noting that "sellers protected by PACA are . . . elevated to a priority position above secured creditors").

In exchange for the tremendous protection it affords produce sellers, PACA demands strict compliance with the Act's statutory provisions and associated regulations promulgated by the United States Department of Agriculture ("USDA"). *See Paris Foods Corp. v. Foresite Foods, Inc.*, 278 Fed. Appx. 873, 874 (11th Cir. 2008) ("Strict compliance with PACA is required to preserve one's rights in a PACA statutory trust"); *Am. Banana Co., Inc. v. Republic Nat'l Bank of N.Y.*, 362 F.3d 33, 42 (2d Cir. 2004) ("Strict eligibility requirements accompany the extraordinary protection afforded by PACA's trust provision"); *In re John DeFrancesco & Sons, Inc.*, 114 B.R. 335, 338 (D. Mass. 1990) ("in order to preserve its PACA trust benefits . . . [a seller] must prove that it strictly complied with all the necessary statutory requirements").

Importantly, PACA prescribes permissible payment terms between a produce seller and a produce buyer. Because the statute is intended to protect the sale of produce on a short-term credit basis, the default payment period, contained in regulations promulgated by the Secretary of Agriculture, is ten days. 7 C.F.R. § 46.2(aa)(5). However, the maximum time for payment to which a seller can agree in writing and still be eligible for PACA protection is thirty days after acceptance of the commodities. 7 C.F.R. § 46.46(e)(1)-(2).

The statute also requires a produce seller to timely notify a produce buyer of its intent to preserve PACA trust rights. 7 U.S.C. § 499e(c)(3)–(4). The regulations set forth, in detail, the methods by which a seller may submit such a notice and the required contents of the notice. *See* 7 C.F.R. § 46.46(f). A notice to preserve PACA rights must be sent "within thirty calendar days" after the expiration of the payment term prescribed by 7 C.F.R. § 46.2(aa)(5) or the expiration of

7

the payment term agreed to by the parties in writing.  7 U.S.C. § 499e(c)(3).  Taken together, the timeliness of a grower's notice to preserve PACA rights via an invoice is necessarily determined by and dependent upon the underlying payment term.

B. Effect of an Oral Agreement to Extend Payment Terms

This court recently discussed the effect of an oral agreement to extend PACA payment terms in *In re Wayne Bailey, Inc.*, 592 B.R. 79 (Bankr. E.D.N.C. 2018) with regard to the PACA claim of Scott Farms, Inc. and noted the current split of authority as to the effect of such an agreement.  The court concluded that under the unique facts presented in that matter, "the existence of an oral payment arrangement does not invalidate PACA protection, *in and of itself*, but merely goes to the enforceability of the agreement." *Id.* at 85 (emphasis added).  There, the parties' orally agreed-upon payment term directly conflicted with the payment term indicated on the disputed invoices, such that the creditor's PACA eligibility was invalidated.  In the previous matter, because of the conflict between the oral and written terms, it was not necessary for this court to directly address the issue squarely before the court in the instant matter, which is: the effect of an oral agreement to extend payment terms beyond the ten day default period provided in 7 C.F.R. § 46.2(aa)(5) on eligibility for PACA protection.

The United States Court of Appeals for the Fourth Circuit has not previously considered the effect of oral agreements to extend PACA payment terms, and no precedent regarding this inquiry exists in this district.  Accordingly, the court will consider the applicable statutes, regulations, and other courts' decisions in resolving the issue.

PACA and its supporting regulations make no reference to oral agreements of any kind.  A pre-transaction, pre-default agreement to extend payment terms *is* permissible under PACA's

8

regulations, provided that the agreement is memorialized *in writing* and the agreed-upon payment term does not exceed the statutory maximum of thirty days. 7 C.F.R. § 46.46(e)(1). The applicable regulation states, in relevant part:

> Parties who elect to use different times for payment must reduce their agreement to writing before entering into the transaction and maintain a copy of their agreement in their records, and the times of payment must be disclosed on invoices, accountings, and other documents relating to the transaction.

7 C.F.R. § 46.46(e)(1) (emphasis added).

As noted previously, PACA requires a grower to timely notify the produce seller of its intent to preserve trust benefits. The applicable statute specifically contemplates the existence of a *written* agreement to extend payment terms between parties as follows:

> The unpaid supplier, seller, or agent shall lose the benefits of such trust, unless such person has given notice to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary **[or] (ii) after expiration of other such time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction . . . .**

7 U.S.C. § 499e(c)(3) (emphasis added).

Several courts have concluded that a grower does not waive its PACA rights by orally agreeing to extend the governing payment term. *See Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3d. Cir 1998) (holding that parties' "failure to reduce their oral agreement with respect to the payment term to writing [did] not disqualify them [from PACA protection]"); *Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777 (8th Cir. 1991). Other courts have concluded that oral agreements to extend payment terms are acceptable and do not invalidate PACA eligibility, provided that the agreed-upon term does not extend the statutory maximum of thirty days. *See, e.g.*, *Produce Alliance v. Let-Us Produce*, 776 F.Supp.2d 197, 210 (E.D. Va. 2011) (stating that

9

"non-conforming agreements to extend payment terms for more than 10 days, but in no case more than 30 days, do not invalidate . . . otherwise valid PACA rights"); *American Banana Co.* at 47 (finding that where "a seller agrees—orally or in writing—to a payment period exceeding thirty days, it forfeits trust protection."). Finally, other courts have determined that because PACA demands strict compliance, any agreement to extend payment terms must be made pre-transaction and preserved in writing as required by 7 C.F.R. § 46.46(e)(1). *Bowlin & Son, Inc. v San Joaquin Food Serv., Inc.*, 958 F.2d 938, 940 (9th Cir. 1992); *In re John DeFrancesco & Sons, Inc.* 114 B.R. 335, 336 (Bankr. D. Mass. 1990).

Kornegay relies upon *In re Atlanta Egg & Produce, Inc.*, 321 B.R. 746 (N.D. Ga. 2005), for the proposition that substantial compliance, rather than strict compliance, with PACA is sufficient to preserve a grower's trust rights. In *Atlanta Egg*, the court determined that even absent a written agreement, the "sellers satisfied the notice requirement by including the requisite language on the face of their invoices to Atlanta Egg . . . and the payment period on the invoices did not exceed thirty days." *Id.* at 755. After analysis of the range of cases, the court concludes that the better position is to hold that an oral agreement cannot extend the PACA eligible payment term beyond the default time period for purposes of calculating the timeliness of notice. To be clear, the existence of an oral agreement does not *in and of itself* invalidate PACA eligibility; however, eligibility for PACA protection should be evaluated employing only written agreements to extend payment terms not to exceed thirty days, or the ten-day default time period. The court comes to the conclusion based on (1) the plain language of the statute and accompanying

10

regulations and (2) the policy requiring strict compliance with PACA provisions in exchange for the extraordinary protection afforded.[4]

The starting and ending point for any matter of statutory interpretation is the plain meaning of the text. *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992); *United States v Ron Pair Enters., Inc.*, 489 U.S. 235, 241-41 (1989). The payment term provided by the statute and applicable regulations is ten days 7 C.F.R. § 46.2(aa)(5). That "default period" can only be extended in writing, and even in that case, not to more than thirty days after acceptance of the goods. 7 C.F.R. § 46.46(e)(1). Finally, the notice of PACA rights required by 7 U.S.C. § 499e(c)(3)-(4) must be no later than 30 days after the default payment term [10+30=40], or 30 days after a written agreement term of not more than 30 days [in no event more than 30+30=60]. 7 U.S.C. § 499e(c)(3). The text of the applicable regulations clearly provides that the ten-day period can only be modified in writing. Additionally, when determining the appropriate notice period in play, the starting point is either the ten-day default period or an appropriately expanded period, i.e., one that is in writing and not more than 30 days.

The court has seriously and painstakingly considered the reasoning of those other courts that find that an oral agreement to extend payment terms not only does not affect PACA eligibility, but that such orally prescribed time period should be used to calculate the relevant notice period, and frankly finds them unpersuasive and strained. If an oral agreement was an acceptable means of preserving PACA eligibility, the statutes or regulations could easily state so. In fact, those statutes and regulations clearly state the opposite.

---

[4] The court has discussed the policy of strict compliance *supra*.

11

When the policy of strict compliance is considered with the plain language of the statute and regulations, it is clear that a pre-transaction, pre-default *oral* agreement to extend PACA payment terms should not be considered when calculating the notice period for PACA eligibility. Absent a written agreement stating otherwise, a court must impose the default payment term of ten days as prescribed by the Secretary of Agriculture. 7 C.F.R. § 46.2(aa)(5). *See Southerland Produce Sales, Inc. v High Country Distribution, LLC, et al,* C.D. Utah 2017 (Case No. 2:14-CV-00795-RJS) (the plain language "makes clear that to be 'eligible for trust benefits' a seller must elect to use the default 10 day term or must 'reduce . . . to writing an agreement for a term of not more than 30 days after receipt and acceptance of the commodities.'"). Because no written agreement existed between the parties, the default payment term of ten days governed the 2016 transactions. The court will now turn to whether Kornegay's Disputed Invoices were timely submitted to the debtor to afford the requisite notice.

C. Timeliness of Kornegay's Notice to Preserve PACA Trust Rights

Kornegay employed the invoice notice method to preserve its PACA rights pursuant to 7 C.F.R. § 46.46(f)(3), and the Disputed Invoices contained the statutorily required language. As explained previously, an invoice notice must be sent "within thirty calendar days" after the expiration of the underlying payment term. 7 U.S.C. § 499e(c)(3). In this case, based upon a ten-day payment term, all three of the Disputed Invoices were untimely pursuant to the following calculations:

(1) Invoice #17362 in the amount of $5,224.16, which lists a ship date of August 2, 2016, such that the invoice must have been sent within thirty days of August 12, 2016 i.e., September 11, 2016. Invoice #17362 was not submitted to the debtor until September 20, 2018 and was therefore untimely.

12

(2) Invoice #17376 in the amount of $5,072.00, which lists a ship date of August 10, 2016, such that the invoice must have been sent within thirty days of August 20, 2016 i.e., September 19, 2016. Invoice #17376 was not submitted to the debtor until September 20, 2018 and was therefore untimely.

(3) Invoice #17442 in the amount of $4,422.84, which lists a ship date of September 21, 2016, such that the invoice must have been sent within thirty days of October 1, 2016 i.e., October 21, 2016. Invoice #17442 was not submitted to the debtor until November 12, 2018 and was therefore untimely.

The fact that Kornegay otherwise complied with PACA's many other requirements is immaterial as to the timeliness of its notice to preserve PACA trust rights.

## CONCLUSION

Based on the foregoing[5], the debtor's Objection to the PACA Claim of Kornegay is ALLOWED. Kornegay shall have an allowed PACA claim in the amount of $30,308.58. Kornegay shall also have an allowed general unsecured claim in the amount of $14,719.00 + $8,201.99, or $22,920.99.

**END OF DOCUMENT**

---

[5] The court has determined this matter on the issue of the effect of oral agreements on calculating the correct notice periods for PACA eligibility. The court notes, however, that the three invoices at stake all contain the term "Net 30." Kornegay asks the court to interpret that notation to mean that payment was due within 30 days of shipment. See Affidavit of Kim Kornegay-LeQuire dated May 29, 2019 and attached to Claim No. 123-1. However, to interpret the term "Net 30," in that manner would result in payment being due on all three invoices **before** the invoices were sent. The court is not so inclined. Therefore, PACA eligibility could be denied herein on the alternative ground that the oral agreement was in conflict with the written term on the invoice, which on its face allows payment in excess of 30 days from acceptance of the sweet potatoes. *See In re Wayne Bailey, Inc*., 592 B.R. 79 (Bankr. E.D.N.C. 2018).