**SO ORDERED.**

**SIGNED this 14 day of February, 2019.**

                                                               **Stephani W. Humrickhouse**
                                                               **United States Bankruptcy Judge**

___

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

**IN RE:**

                                                     **CASE NO. 18-00284-5-SWH**

**WAYNE BAILEY, INC.**

                                                        **CHAPTER 11**

      **DEBTOR**

**ORDER ALLOWING OBJECTION TO PACA CLAIM**
**OF SOUTHERN ROOTS FARMING COMPANY, LLC**

The matter before the court is the debtor's Objection to PACA Claim No. 79 filed by Southern Roots Farming Company, LLC on June 6, 2018, Dkt. 379 (the "Debtor's Objection"), Castellini Company, LLC's and SP Funding, LLC's Omnibus Objections to Asserted PACA Claims filed on June 4, 2018, Dkt. 360 ("SPF Objection"), the Objection to PACA Claim [Southern Roots Farming Company, LLC] filed by CFG Financial Services, LLC ("CFG") on May 15, 2018, Dkt. 314 ("CFG Objection") and Supplement to Objection of CFG Financial Services, LLC in Objection to PACA Claim No. 79 filed by Southern Roots Farming Company, LLC filed on October 23, 2018, Dkt. 685 ("CFG Supplemental Objection"). A response to the Objection was filed by Southern Roots Farming Company, LLC ("Southern Roots") on June 14, 2018, Dkt. 401

(the "Response"). Bench briefs were supplied to the court by CFG and Southern Roots on October 24, 2018. Hearings were held in Raleigh, North Carolina on October 25, 2018 and on November 5, 2018, after which the court took the matter under advisement. After a review of the case record and consideration of the parties' arguments, the Objection will be allowed.

## BACKGROUND

Wayne Bailey, Inc. (the "debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on January 21, 2018 (the "Petition Date"). The court issued a Notice of Chapter 11 Bankruptcy Case on the Petition Date, Dkt. 2, which established a deadline of May 29, 2018 for the filing of claims by non-governmental creditors in this case (the "Claims Bar Deadline").

The debtor is a sweet potato grower, packer, and shipper based in Chadbourn, North Carolina. As part of its business operation, the debtor regularly purchases sweet potatoes from local growers, packs the purchased potatoes, and sells and ships them to wholesale and retail vendors. Many of the growers who sell potatoes to the debtor are licensed produce sellers pursuant to the Perishable Agricultural Commodities Act ("PACA"), which governs the sale of produce in the United States and is codified at 7 U.S.C. §§ 499a–499t. Under PACA, upon the sale of produce, a statutory trust is imposed upon the purchased "perishable agricultural commodities" and all receivables and proceeds thereof. As a result, the debtor contends that many of the sellers in this case may hold claims subject to PACA's statutory trust provisions, such that a separate PACA-specific claims process was necessary.

2

A. Procedural History

Based on the large number of anticipated PACA claims in the case, the court entered a consent order on March 5, 2018, Dkt. 139 (the "Consent Order"), which required any unpaid produce "seller or supplier of the debtor alleging rights under [PACA]" to file a proof of claim using a specific form on or before April 16, 2018 (the "PACA Claim Deadline"). Southern Roots timely filed its PACA proof of claim on April 13, 2018 in the amount of $1,870,411.09 for sweet potatoes grown during the 2017 growing season. Southern Roots filed an Amended PACA Proof of Claim No. 79-2, on July 17, 2018 in the amount of $1,882,944.67. The original proof of claim and the amended proof of claim differ only by the inclusion of an interest component. Objections to Southern Roots' PACA proof of claim were filed by both the debtor and CFG.

## ISSUES AND PARTIES' POSITIONS

In its Amended PACA Claim, filed on July 17, 2018 (Claim No. 79-2), Southern Roots asserts a claim in the amount of $1,882,944.67 and contends that this full amount is entitled to statutory trust protection pursuant to PACA. The debtor's objection asserts that: 1) Southern Roots "was not the grower of, and had no actual ownership interest in, the 2017 sweet potato crop reflected in the invoices attached to the PACA Proof of Claim and therefore, "Southern Roots is therefore not eligible for PACA trust benefits;" 2) that the Grower Agreements entered into between the debtor and Southern Roots created payment terms in excess of those prescribed by PACA; and 3) the payment terms contained in the Grower Agreements conflicted with the payment terms contained in the invoices. The CFG objection asserts that: 1) since Southern Roots "was not a supplier, seller or agent who transferred ownership, possession or control of the sweet potatoes identified in the invoices issued by Southern Roots, [Southern Roots] is not entitled to

3

assert the benefits of a PACA trust," and 2) the PACA waiver executed by George Wooten is binding upon Southern Roots and waives the PACA claim in its entirety, or alternatively, to the extent of George Wooten's 50% ownership interest in Southern Roots. The SPF Objection asserts that the Southern Roots PACA Claim was waived by George Wooten. In the CFG Supplemental Objection filed after the hearing held on October 25, 2018, CFG asserted an additional argument that incorporated the position of the debtor taken in its objection by contending that the payment terms between the parties exceeded those allowed under PACA statutes and regulations.[1]

In response, Southern Roots maintains that 1) it is the proper holder of the PACA claim because it "transferred ownership, possession or control of the potatoes," 2) the waiver executed by George Wooten does not waive Southern Roots' PACA rights, and 3) the payment terms between the parties do not exceed those allowed under PACA statutes and regulations.

For purposes of its ruling, the court will assume, but not decide, that Southern Roots is the proper party to assert the PACA claim and that the waiver is unenforceable as against Southern Roots. The court's ruling, therefore, will only be based upon its analysis of the payment terms between the parties and their effect on PACA eligibility.

## DISCUSSION

A. PACA, Generally

PACA, enacted by Congress in 1930, exists "to encourage fair trading practices in the marketing of perishable commodities by suppressing unfair and fraudulent business practices in

---

[1] Southern Roots moved to strike the additional argument regarding payment terms contained in CFG's Supplemental Objection on October 23, 2018, Dkt. 685, and CFG responded. The court will consider the arguments in the Supplemental Objection since they mirror the objection basis set forth by the debtor, and therefore do not prejudice Southern Roots in any way.

marketing of fresh and frozen fruits and vegetables . . . and providing for collecting damages from any buyer or seller who fails to live up to his contractual obligations." H.R. Rep. No. 543, 98th Cong., 2d Sess. 3 (1984).  To this end, the statute creates, "immediately upon a delivery [of produce], a nonsegregated 'floating' trust in favor of sellers on the perishable commodities sold and the products and proceeds derived from the commodities."  *Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir. 2003).  PACA requires a "produce dealer [to hold] produce-related assets as a fiduciary in statutory trust until full payment is made to the seller."  *Bowlin & Son, Inc. v. San Joaquin Food Serv. (In re San Joaquin Food Serv.)*, 958 F.2d 938, 939 (9th Cir. 1992).

PACA is remedial in nature.  *See United Potato Co., Inc. v. Burghard & Sons, Inc.*, 18 F.Supp.2d 894, 899 (N.D. Ill. 1998) (explaining that "PACA was meant to add a remedy beyond those already provided by the states and other statutes").  Where a seller is not promptly paid for the produce it delivers, the floating trust imposed by PACA "gives sellers of perishable agricultural commodities a right of recovery that is superior to the right of all other creditors, including secured creditors."  *Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 595 (4th Cir. 2010); *see also In re Superior Tomato-Avocado, Ltd.*, 481 B.R. 866, 869 (Bankr. W.D. Tex. 2012) (citations omitted) (explaining that PACA effectively grants a produce seller "a 'superpriority' right [to payment] that trumps the rights of a buyer's other secured and unsecured creditors"); *In re Yarnell's Ice Cream Co., Inc.*, 469 B.R. 823, 827 (Bankr. E.D. Ark. 2012) (noting that "sellers protected by PACA are . . . elevated to a priority position above secured creditors").

In exchange for the tremendous protection it affords produce sellers, PACA demands strict compliance with the Act's statutory provisions and associated regulations promulgated by the

5

United States Department of Agriculture ("USDA").  *See Paris Foods Corp. v. Foresite Foods, Inc.*, 278 Fed. Appx. 873, 874 (11th Cir. 2008) ("Strict compliance with PACA is required to preserve one's rights in a PACA statutory trust"); *Am. Banana Co., Inc. v. Republic Nat'l Bank of N.Y.*, 362 F.3d 33, 42 (2d Cir. 2004) ("Strict eligibility requirements accompany the extraordinary protection afforded by PACA's trust provision"); *In re John DeFrancesco & Sons, Inc.*, 114 B.R. 335, 338 (D. Mass. 1990) ("in order to preserve its PACA trust benefits . . . [a seller] must prove that it strictly complied with all the necessary statutory requirements").

Importantly, PACA prescribes permissible payment terms between a produce seller and a produce buyer.  Because the statute is intended to protect the sale of produce on a short-term credit basis, the default payment period, contained in regulations promulgated by the Secretary of Agriculture, is ten days. 7 C.F.R. § 46.2(aa)(5).  However, the maximum time for payment to which a seller can agree in writing and still be eligible for PACA protection is thirty days after acceptance of the commodities.  7 C.F.R. § 46.46(e)(1)-(2).

The statute also requires a produce seller to timely notify a produce buyer of its intent to preserve PACA trust rights.  7 U.S.C. § 499e(c)(3)–(4).  The regulations set forth, in detail, the methods by which a seller may submit such a notice and the required contents of the notice.  *See* 7 C.F.R. § 46.46(f).  A notice to preserve PACA rights must be sent "within thirty calendar days" after the expiration of the payment term prescribed by 7 C.F.R. § 46.2(aa)(5) or the expiration of the payment term agreed to by the parties in writing.  7 U.S.C. § 499e(c)(3).

The parties have stipulated that "the payment terms between the [d]ebtor and Southern Roots were 10 days after the sweet potatoes were packed by the [d]ebtor."  On its face the 10-day payment term appears to be in compliance with 7 C.F.R. § 46.3(aa)(5) which provides:

> (aa) Full payment promptly is the term used in the Act in specifying the period of time for making payment without committing a violation of the Act. "Full payment promptly," for the purpose of determining violations of the Act, means:
>
> . . . .
>
> (5) payment for produce purchased by a buyer, within 10 days after the day on which the produce is accepted.

7 C.F.R. ▪ 46.2(aa)(5).

However, further inquiry into when the produce was **accepted** is necessary. Southern Roots maintains that it "accepted" the sweet potatoes from the debtor at the time of packing of the produce, and that since its terms were Net 10, the payment terms are PACA compliant. In response, CFG and the debtor make two arguments: 1) "acceptance" of the potatoes occurred significantly prior to pack out, such that the "10 days after packing" stipulated terms would exceed the statutory limitations; and, 2) the payment terms set forth in the written Grower Agreements conflict with those found on the invoices, also rendering the invoices PACA ineligible.

> "Acceptance" is defined in the PACA regulations as "any act by the consignee which is inconsistent with the consignor's ownership, but if such act is wrongful against the consignor it is acceptance only if ratified by him.[2]

7 C.F.R. ▪ 46.2(dd).

The competing positions of the parties direct the court's focus to the Grower Agreements. The debtor entered into (4) four Sweet Potato Grower's Agreement, Right of Entity, Security Agreement and Pledge of Collateral (hereinafter "Grower Agreement") with Southern Roots for the 2017 growing season as follows:

---

[2] The definition of "acceptance" is made up of three components in the disjunctive, therefore requiring only one to apply.

7

    1.  Grower Agreement dated August 24, 2017[3] between Southern Roots and the debtor relating to 1050 acres located in Columbus County, NC;

    2.  Grower Agreement dated August 24, 2017 between Southern Roots and the debtor relating to 35 acres located in Horry County, SC;

    3.  Grower Agreement dated August 17, 2017 between Southern Roots and the debtor relating to 650 acres located in Sampson County, NC;

    4.  Grower Agreement dated August 17, 2017 between Southern Roots and the debtor relating to 115 acres in Columbus County, NC for organic sweet potatoes.

A pre-transaction agreement to extend payment terms beyond the 10-day period *is* permissible under PACA's regulations, provided that the agreement is memorialized *in writing* and the agreed-upon payment term does not exceed the statutory maximum of thirty days. 7 C.F.R. § 46.46(e)(1). The applicable regulation states, in relevant part**:**

> Parties who elect to use different times for payment must reduce their agreement to writing before entering into the transaction and maintain a copy of their agreement in their records, and the times of payment must be disclosed on invoices, accountings, and other documents relating to the transaction.

7 C.F.R. § 46.46(e)(1) (emphasis added).

The questions posed by the Grower Agreements are: do the Grower Agreements contain payment terms and, if so, are those terms PACA compliant? The parties do not disagree regarding the import of the "growing" portion of the Grower Agreements. It provides terms pursuant to which sweet potatoes are planted, grown and harvested on the grower's land—the debtor contributes plants, labor, equipment and expertise and the grower contributes land, pesticides,

---

[3] The dates of the Grower Agreements are noted as of the date of the last party to sign.

8

fertilizer and cultivation expertise. Interpretation of the following provisions contained in the Grower Agreements forms the basis of the controversy:

. . . .

>WBI and Grower shall produce the 2017 organic sweet potato crop on a cooperative basis whereby upon harvesting, half the crop yield . . . shall be the property of WBI free and clear of any claims of the Grower and half the crop . . . shall be the property of the Grower free and clear of any claims of WBI.
>
>WBI will pay $200 per 18 bushel bin equivalent ($422.56 per 38 bushel bin equivalent for Grower's half . . . of the sweet potatoes . . . )[4]
>
>Upon the harvesting and gathering of sweet potatoes upon Grower's land by WBI . . . Grower hereby transfers and assigns Grower's full legal and beneficial title, rights and interests . . . to said sweet potatoes to WBI . . . subject to WBI's and Grower's agreement as to purchase price. WBI will store Grower's half of the crop yield in one of WBI's . . . facilities . . .
>
>In the event that WBI elects to purchase Grower's half of the crop yield . . . WBI will pay Grower the prices indicated above. If payment has not been remitted on or before December 1, 2017 . . . Grower will have the option to sell its half . . . but subject to WBI having the right of refusal. WBI purchases made subsequent to December 1, 2017 shall bear interest at the rate of ten percent (10%) per annum.

The parties clearly have agreed to a price. They have also placed an outside due date of December 1, 2017 before interest begins to accrue. The court therefore concludes that the Grower Agreements set forth payment terms. But do those terms exceed 10 days from acceptance of the produce?

Both the debtor and CFG assert that the Grower Agreement terms which vest title in the sweet potatoes in the debtor upon harvest and gathering of the sweet potatoes set the date of

---

[4] Actual prices differ between the Grower Agreements but are designated in the same place and form on the document.

acceptance at the point, not the later packing date asserted by Southern Roots. The court agrees. Since the packing dates could, and the court assumes do, in fact, significantly post date the harvest date, i.e., in excess of 30 days, the payment terms set forth in the Grower Agreements render the invoices PACA ineligible.

Furthermore, 7 C.F.R. § 46.46(e)(1) provides that if a pre-transaction agreement between the parties sets forth a date in excess of 10 days (but not more than 30) for payment, such term must be set forth on the invoices related to the transactions. Although the invoices set forth payment terms of $10^5$ days, they do not set forth the terms provided in the Growers Agreements. For that reason as well, the invoices are PACA ineligible.

## CONCLUSION

Based on the foregoing, Objections to the PACA Claim of Southern Roots are ALLOWED. The record is unclear as to whether the sum of $1,882,944.67 reflected on Southern Roots' Amended Proof of Claim is disputed because the parties requested resolution of the legal issues only. Therefore, the debtor shall have 14 days to file an objection to the amount asserted by Southern Roots. If an objection is filed, the court will set a hearing. If not, upon the expiration of the 14-day period, Southern Roots shall have an allowed general unsecured claim in the amount of $1,882,944.67.

### END OF DOCUMENT

---

[5] It is unclear whether the invoice terms are actually Net 10—the invoices state that term but reflect a Due Date thirty days past the date of the invoice. It is not necessary for the court to address this discrepancy in light of the basis for its ruling.