IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-CV-186-D

| | | |
|---|---|---|
| SCOTT FARMS, INC., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| WAYNE BAILEY, INC., | ) | |
| | ) | |
| Appellee. | ) | |

On October 12, 2018, Scott Farms, Inc. ("Scott Farms" or "appellant") appealed the order of the United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court") allowing Wayne Bailey, Inc.'s ("Wayne Bailey" or "appellee") objection to Scott Farms's Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq., claim [D.E. 1, 1-1]. In its order, the Bankruptcy Court held that Scott Farms had a PACA claim in the amount of $39,000 subject to a setoff of $33,184 and a general unsecured claim in the amount of $116,398 [D.E. 1-1]. Scott Farms contends that it has a valid PACA claim for $116,398 and that the Bankruptcy Court improperly applied a setoff for debts that Scott Farms owed to Wayne Bailey that were held in PACA trust, instead of the portion of Scott Farms's unsecured claim. On December 14, 2018, Scott Farms filed a brief in support of its appeal [D.E. 15]. On January 14, 2019, Wayne Bailey responded in opposition [D.E. 16]. On January 28, 2019, Scott Farms replied [D.E. 17]. As explained below, the court affirms in part, reverses in part, and remands for further proceedings.

I.

Before filing its Chapter 11 petition, Wayne Bailey was a "sweet potato grower, packer, and shipper based in Chadbourn, North Carolina." [D.E. 1-1] 1–2. Wayne Bailey's business included

purchasing sweet potatoes from local growers, packing the sweet potatoes, and selling and shipping the sweet potatoes to vendors. See id.

From March to September 2017, Scott Farms sold white sweet potatoes to Wayne Bailey for a total of $39,000. See, e.g., [D.E. 10-1] 2; [D.E. 10-2] 5–10; [D.E. 12] 17, 25. The parties did not have a written agreement governing the sales, but did have an oral agreement that Wayne Bailey's payment for the white sweet potatoes was due to Scott Farms 30 days after Wayne Bailey placed the white sweet potatoes into Wayne Bailey's inventory. See [D.E. 1-1] 3; [D.E. 12] 52–53. The parties and the Bankruptcy Court all agree Scott Farms has a valid PACA claim for $39,000 on these sales. See [D.E. 1-1] 2; [D.E. 15] 11.

In September and October 2017, Scott Farms sold orange sweet potatoes to Wayne Bailey. See [D.E. 10-1] 2; [D.E. 12] 17–20. The parties did not have a written agreement governing the sales, but did have an oral agreement that Wayne Bailey's payment for the orange sweet potatoes was due to Scott Farms 30 days after Wayne Bailey placed the orange sweet potatoes went into Wayne Bailey's inventory. See [D.E. 1-1] 3. As for when the orange sweet potatoes went into Wayne Bailey's inventory, Wayne Bailey obtained bins of orange sweet potatoes from Scott Farms but did not commit to buying them. See [D.E. 12] 18, 32. Instead, Wayne Bailey stored the orange sweet potatoes until Wayne Bailey inspected, processed, and packed the orange sweet potatoes, which the parties call a "pack out" (i.e., "when [Wayne Bailey] accepted and received Scott Farms's potatoes."). [D.E. 1-1] 3; see [D.E. 12] 18, 26–28, 31–41. When Wayne Bailey packed out the orange sweet potatoes, Wayne Bailey determined the price it would pay to Scott Farms for the sweet potatoes. See [D.E. 12] 26–29. Because Wayne Bailey determined the price of the orange sweet potatoes when Wayne Bailey packed them out, Scott Farms would not send an invoice to Wayne Bailey until after Wayne Bailey packed out the orange sweet potatoes and put them into Wayne

2

Bailey's inventory. See id. at 28–29, 31–40, 50.

Wayne Bailey knew how much it owed Scott Farms when it packed out the sweet potatoes. See id. at 28–29. At the Bankruptcy Court hearing on July 24, 2018, Rick Martin ("Martin"), Wayne Bailey's Chief Financial Officer, explained that once Wayne Bailey packed out the sweet potatoes, Wayne Bailey would put the packed-out sweet potatoes in inventory. See id. At that point, from "an accounting standpoint," Wayne Bailey knew how much it owed Scott Farms and would put the liability in Wayne Bailey's accounts payable, even though Scott Farms had not yet issued an invoice to Wayne Bailey. See id. Thus, Wayne Bailey would debit inventory and credit accounts payable after the pack out. See id. Wayne Bailey also knew and recorded in its accounts payable the payment deadline for each pack out, which was 30 days after the pack out under the parties' oral agreement. See id. at 36, 48.

The parties dispute whether PACA protects the orange sweet potato orders in September and October 2017. Wayne Bailey packed out 252 bins of orange sweet potatoes on September 15, 16, 18, and 19, 2017. See [D.E. 1-1] 3; [D.E. 10-1] 12. Wayne Bailey's records reflect (1) pack outs on September 15, 16, 18, and 19, 2017, (2) pack out numbers for those dates, and (3) the dates that Wayne Bailey had to pay Scott Farms for the pack outs, which was 30 days after the pack out date pursuant to the parties' oral agreement. See [D.E. 10-2] 1. Thus, the due dates for the pack outs on September 15, 16, 18, and 19, 2017, were October 15, 16, 18, and 19, 2017. See id. Notwithstanding these due dates, Wayne Bailey did not pay Scott Farms for these pack outs on the due dates. Cf. [D.E. 1-1] 2–3. Moreover, Scott Farms did not invoice Wayne Bailey for these September 2017 pack outs until October 27, 2017. Specifically, on October 27, 2017, "Scott Farms billed [Wayne Bailey] for 252 bins of potatoes via Invoice #21729 [dated October 27, 2017] for the total sum of $77,998." [D.E. 1-1] 3; see [D.E. 10-1] 9, 12; [D.E. 10-2] 1.

3

Wayne Bailey also packed out 127 bins of sweet potatoes on September 22, September 28, October 3, and October 10, 2017. See [D.E. 1-1] 3; [D.E. 10-1] 12. Wayne Bailey's records reflect (1) pack outs on September 22, September 28, October 3, and October 10, 2017, (2) pack out numbers for those dates, and (3) the dates that Wayne Bailey had to pay Scott Farms for the pack outs, which were 30 days after each pack out date under the parties' oral argument. See [D.E. 10-2] 1. Thus, the due dates for the pack outs on September 22, September 28, October 3, and October 10, 2017, were October 22, October 28, November 3, and November 10, 2017. See id. Notwithstanding these due dates, Wayne Bailey did not pay Scott Farms for these pack outs on the due dates. See [D.E. 1-1] 2–3. Moreover, Scott Farms did not invoice Wayne Bailey for the pack outs of September 22, September 28, October 3, and October 10, 2017, until October 30, 2017. Specifically, on October 30, 2017, "Scott Farms billed [Wayne Bailey] for 127 bins of potatoes via Invoice #21730 [dated October 30, 2017] for the total sum of $38,400." [D.E. 1-1] 3; see [D.E. 10-1] 11–12; [D.E. 10-2] 1.

The parties agree that Invoice #21729 and Invoice #21730 complied with the requirements of 7 C.F.R. § 46.46(f)(4), notified Wayne Bailey that Scott Farms intended to preserve its PACA trust rights, and contained the line "Net Due November 20, 2017" in the comment section. See [D.E. 1-1] 3; [D.E. 10-1] 9–10. The parties also agree that they "had an oral agreement that payment would be received by Scott Farms from [Wayne Bailey] within thirty days of receipt of the sweet potatoes" and that the parties did not have a "written agreement . . . modifying the statutory 10-day payment period set forth in 7 C.F.R. § 46.2(aa)(5)." [D.E. 1-1] 3.

On November 6, 2017, Wayne Bailey still had not paid Scott Farms for the six invoices from March to September 2017 for the white sweet potatoes in the amount of $39,000 or for Invoice #21729 and Invoice #21730 for the orange sweet potatoes in the amount of $116,398. See [D.E. 12]

4

38–39, 50. On November 6, 2017, Scott Farms sent an e-mail to Wayne Bailey seeking to resolve all amounts that Wayne Bailey owed to Scott Farms. See id. at 38–39; [D.E. 10-1] 1. In the e-mail, Scott Farms asked Wayne Bailey to pay all amounts outstanding to Scott Farms by November 20, 2017. See [D.E. 10-1] 1. Scott Farms also proposed crediting Wayne Bailey's debt to Scott Farms with an amount that Scott Farms owed to Wayne Bailey for plants that Scott Farms had purchased from Wayne Bailey. See id.

On November 20, 2017, Wayne Bailey still had not paid its debt to Scott Farms. See [D.E. 12] 39–40. On November 21, 2017, Scott Farms filed an informal PACA claim with the United States Department of Agriculture concerning the white sweet potatoes and the orange sweet potatoes. See id.; [D.E. 10-2] 2–10.

Wayne Bailey never paid Scott Farms for the white sweet potatoes or the orange sweet potatoes. Cf. [D.E. 1-1] 3. On January 21, 2018, Wayne Bailey filed a bankruptcy petition under Chapter 11 of the United States Bankruptcy Code. See [D.E. 9-1].

On March 5, 2018, the United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court") entered a consent order that required any "unpaid produce seller or supplier of [Wayne Bailey] alleging rights under [PACA]" to file a written proof of claim by April 16, 2018. [D.E. 9-3] 1–2. On April 16, 2018, Scott Farms filed its written proof of claim form asserting a PACA claim for $154,031.47. See [D.E. 9-4]. On June 4, 2018, Wayne Bailey objected to Scott Farms's PACA claim. See [D.E. 9-7]. On June 25, 2018, Scott Farms responded in opposition and requested a hearing concerning Wayne Bailey's objection. See [D.E. 9-8]. On the same date, Wayne Bailey amended its objection to Scott Farms's PACA claim. See [D.E. 9-9]. On July 23, 2018, Scott Farms responded in opposition. See [D.E. 9-10]. On July 24, 2018, the Bankruptcy Court held a hearing and invited the parties to file supplemental memoranda. See [D.E.

5

9-14] 1. On July 26, 2018, Scott Farms supplemented its response. See [D.E. 9-11]. On August 8, 2018, Wayne Bailey replied. See [D.E. 9-12]. On August 10, 2018, Scott Farms filed a sur-reply. See [D.E. 9-13]. On September 28, 2018, the Bankruptcy Court allowed Wayne Bailey's objection and held that Scott Farms had a PACA claim in the amount of $39,000 for the white sweet potatoes (subject to a setoff of $33,184), that PACA did not protect the $116,398 owed for the orange sweet potatoes, and instead that Scott Farms had a general unsecured claim of $116,398 for the orange sweet potatoes. See [D.E. 1-1]; [D.E. 9-14].

II.

Under 28 U.S.C. § 158(a)(1), district courts have jurisdiction to hear appeals from "final judgments, orders, and decrees." In bankruptcy proceedings, "the concept of finality is more flexibly applied than with regard to district court judgments." Brandt v. Wand Partners, 242 F.3d 6, 13 (1st Cir. 2001); see Mort Ranta v. Gorman, 721 F.3d 241, 246 (4th Cir. 2013); McDow v. Dudley, 662 F.3d 284, 287 (4th Cir. 2011); In re Comput. Learning Ctrs., Inc., 407 F.3d 656, 660 (4th Cir. 2005); A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1009 (4th Cir. 1986). No uniform rule, however, has been developed to determine when an order or judgment is final. See Brandt, 242 F.3d at 13. "[A]n Order which ends a discrete judicial unit in the larger case concludes a bankruptcy proceeding and is a final judgment for the purposes of 28 U.S.C. § 158." In re Kitty Hawk, Inc., 204 F. App'x 341, 343 (5th Cir. 2006) (per curiam) (unpublished) (alteration omitted); see Mort Ranta, 721 F.3d at 246; McDow, 562 F.3d at 287; In re Comput. Learning Ctrs., Inc., 407 F.3d at 660; W.S. Badcock Corp. v. Beaman, No. 4:14-CV-169-BO, 2015 WL 575422, at *1 (E.D.N.C. Feb. 11, 2015) (unpublished).

The court has jurisdiction over this appeal. In a bankruptcy appeal, a district court reviews a bankruptcy court's legal determinations de novo and its factual findings for clear error. See In re White, 487 F.3d 199, 204 (4th Cir. 2007); In re Official Comm. of Unsecured Creditors for Dornier

6

Aviation (N. Am.), Inc., 453 F.3d 225, 231 (4th Cir. 2006); Schlossberg v. Barney, 380 F.3d 174, 178 (4th Cir. 2004).

III.

Scott Farms contends that the Bankruptcy Court made three errors. See [D.E. 15] 7–8. First, Scott Farms contends that the Bankruptcy Court erred in concluding that the "Net Due November 20, 2017" notations on Invoice #21729 and Invoice #21730 for the orange sweet potatoes were pre-default notations that constituted payment terms and thereby caused Scott Farms to lose its trust rights under PACA for the orange sweet potatoes. Id. Instead, Scott Farms contends that it sent Invoice #21729 and Invoice #21730 post-default, but timely under PACA, in order to seek to settle Wayne Bailey's delinquent account. See id. Second, Scott Farms contends that the Bankruptcy Court erred in holding that the pack outs of September 15 and 16, 2017, were untimely under PACA because Wayne Bailey failed to notify Scott Farms of the pack out dates. See id. Third, Scott Farms contends that the Bankruptcy Court erred in applying the setoff that Scott Farms reserved as a right under state law and under 11 U.S.C. § 553 to the part of Scott Farms's claim that the Bankruptcy Court determined was protected by PACA instead of to the portion of the claim that the Bankruptcy Court determined was unsecured. See id.

A.

Congress enacted PACA "in 1930 to suppress unfair and fraudulent business practices in the marketing of perishable commodities, [and] amended [it] in 1984 to provide unique credit protection to sellers of perishable agricultural commodities." Nickey Gregory Co. v. AgriCap, LLC, 597 F.3d 591, 594 (4th Cir. 2010); see Am. Banana Co. v. Republic Nat'l Bank of N.Y., N.A., 362 F.3d 33, 37–38 (2d Cir. 2004); In re Davis Distribs., 861 F.2d 416, 417 (4th Cir. 1988); Spada Props., Inc. v. Unified Grocers, Inc., 121 F. Supp. 3d 1070, 1077–78 (D. Or. 2015); In re Bissett Produce, Inc.,

7

No. 5:14-CV-451-FL, 2015 WL 868029, at *3–4 (E.D.N.C. Feb. 2, 2015) (unpublished), aff'd sub nomen Derek & Matthew Bissett Farms v. Bissett Produce, Inc., 612 F. App'x 684 (4th Cir. 2015) (per curiam) (unpublished). PACA recognized that sellers of perishable goods often "found themselves in the position of unsecured [short-term] creditors of buyers whose creditworthiness could not be verified," placing those sellers "behind banks and other lenders who had obtained security interests in the defaulting purchaser's inventories, proceeds, and receivables." Spada Props., Inc., 121 F. Supp. 3d at 1077–78; see, e.g., Nickey Gregory Co., 597 F.3d at 594–95; In re Davis Distribs., 861 F.2d at 417.

PACA creates, "upon the sale of perishable agricultural commodities, a [nonsegregated 'floating'] trust for the benefit of the unpaid sellers of the commodities on (1) the commodities, (2) the inventory or products derived from them, and (3) the proceeds of the inventory or products." Nickey Gregory Co., 597 F.3d at 595; see 7 U.S.C. § 499e(c)(1)–(2); 7 C.F.R. §§ 46.46(b), (c)(1); see, e.g., PACA Tr. Creditors of Lenny Perry's Produce, Inc. v. Genecco Produce Inc., 913 F.3d 268, 276 (2d Cir. 2019). "The right created by PACA is superior to all other security interests." In re Bissett Produce, 2015 WL 868029, at *3; see 7 U.S.C. § 499e(c)(1)–(2); Nickey Gregory Co., 597 F.3d at 595; Am. Banana Co., 362 F.3d at 38; Spada Props., Inc., 121 F.3d at 1075, 1078. "PACA requires that purchasers of perishable agricultural commodities maintain the trust by retaining the commodities or their proceeds until the commodities sellers are paid, and it makes it unlawful to fail to maintain the trust as required." Nickey Gregory Co., 597 F.3d at 595 (quotations omitted). "PACA confers jurisdiction on district courts to entertain actions by trust beneficiaries to enforce payment from the trust." Id. (quotations omitted).

In exchange for PACA's protection, sellers of perishable commodities must comply with PACA's requirements to show that they qualify as short-term creditors. See Am. Banana Co., 362

8

F.3d at 42; In re Davis Distribs., 861 F.2d at 417; Spada Props., Inc., 121 F. Supp. 3d at 1078–79. First, PACA requires that buyers make "full payment promptly." 7 U.S.C. § 499b(4); 7 C.F.R. §§ 46.2(aa), 46.46(e); see Perfectly Fresh Farms, Inc. v. U.S. Dep't of Agric., 692 F.3d 960, 963 (9th Cir. 2012); Am. Banana Co., 362 F.3d at 42–43; In re Davis Distribs., 861 F.2d at 417; Spada Props., Inc., 121 F. Supp. 3d at 1078–79. PACA's "regulations specify that prompt payment for produce purchased by a buyer is payment within 10 days after the day on which the produce is accepted." Perfectly Fresh Farms, Inc., 692 F.3d at 963 (quotations and alteration omitted); see 7 C.F.R. §§ 46.2(aa)(5), 46.46(e)(1). Parties, however, may agree in writing before a transaction to payment terms that differ from PACA's default 10-day payment period. See 7 C.F.R. §§ 46.46(e)(1), 46.2(aa)(11); Am. Banana Co., 362 F.3d at 43. "Parties who elect to use different times for payment must reduce their agreement to writing before entering into the transaction and maintain a copy of their agreement in their records, and the times of payment must be disclosed on invoices, accountings, and other documents relating to the transaction." 7 C.F.R. § 46.46(e)(1); see 7 C.F.R. § 46.2(aa)(11); Am. Banana Co., 362 F.3d at 42; Spada Props., Inc., 121 F. Supp. 3d at 1079. "The maximum time for payment for a shipment to which a seller . . . can agree, prior to the transaction, and still be eligible for the benefits under [PACA] is 30 days after receipt and acceptance of the commodities . . . ." 7 C.F.R. § 46.46(e)(2); see Am. Banana Co., 362 F.3d at 43.

Although an oral payment term of 30 days or less not reduced to writing does not waive a seller's PACA rights, such an oral payment term is not enforceable under PACA, and PACA's default 10-day payment term applies. See Bocchi Ams. Assocs. Inc. v. Commerce Fresh Mktg. Inc., 515 F.3d 383, 390–91 (5th Cir. 2008); Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc., 307 F.3d 666, 669–70 (7th Cir. 2002); Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197, 203–05 (3d Cir. 1998); Hull Co. v. Hauser's Foods, Inc., 924 F.2d 777, 782 (8th Cir. 1991)

9

("[N]otwithstanding the oral agreements, [the seller] retained the right to demand payment within ten days and seek trust protection under PACA."); In re Davis Distribs., Inc., 861 F.2d at 417–18; Classic Harvest LLC v. Freshworks LLC, No. 1:15-CV-2988-WSD, 2017 WL 2350212, at *5–7 (N.D. Ga. May 31, 2017) (unpublished); Produce All. v. Let-Us Produce, 776 F. Supp. 2d 197, 203–10 (E.D. Va. 2011); In re Dixie Produce & Packaging, LLC, 368 B.R. 533, 536 (Bankr. E.D. La. 2007). Cf. Am. Banana Co., 362 F.3d at 46–47 (holding that "where a seller agrees—orally or in writing—to a payment period exceeding thirty days, it forfeits trust protection").

Second, PACA requires that an unpaid seller timely give written notice to a buyer of its intent to preserve its PACA rights. See 7 U.S.C. § 499e(c)(3)–(4). In order to preserve its PACA rights, a seller must give written notice to the buyer within 30 days of the "expiration of the time prescribed by which payment must be made pursuant to regulation." 7 C.F.R. § 46.46(f)(2)(i). Thus, for PACA's default 10-day payment period, a seller must notify a buyer in writing of its intent to preserve its PACA rights not later than 40 days after the buyer accepts the seller's produce. See id.; 7 C.F.R. § 46.2(aa)(5) ("Payment for produce purchased by a buyer [is due] within 10 days after the day on which the produce is accepted."); Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc., 222 F.3d 132, 136 (3d Cir. 2000). A seller "may use ordinary and usual billing or invoice statements to provide notice" so long as the invoice meets PACA's statutory and regulatory requirements. 7 U.S.C. § 499e(c)(4); see 7 C.F.R. § 46.46(f)(3); Tanimura & Antle, Inc., 222 F.3d at 136; Spada Props., Inc., 121 F. Supp. 3d at 1078; Belair Produce Co. v. Mixt Greens, Inc., No. ELH-12-299, 2012 WL 5199421, at *3–4 (D. Md. Oct. 18, 2012) (unpublished).

After Congress amended PACA in 2011, the United States Department of Agriculture also amended its regulations interpreting PACA to distinguish explicitly between pre-default and post-default agreements. See 7 C.F.R. § 46.46(e)(3); Spada Props., Inc., 121 F. Supp. 3d at 1079,

10

1083–84; see also Heeren, LLC v. Cherry Growers, Inc., No. 1:15-cv-47, 2015 WL 9450851, at *4 (W.D. Mich. Dec. 23, 2015) (unpublished). "If there is a default in payment as defined in [section] 46.46(a)(3), the seller . . . who has met the eligibility requirements of [PACA] will not forfeit eligibility under the trust by agreeing in any manner to a schedule for payment of the past due amount or by accepting a partial payment." 7 C.F.R. § 46.46(e)(3) (emphasis added). A "default" is "the failure to pay promptly money owed in connection with transactions in perishable agricultural commodities; i.e., within the period of time applicable to the type of transaction as established by the provisions of the regulations . . . or as otherwise agreed upon by the parties." Id. § 46.46(a)(3). In the event of a default, PACA's 30-day maximum payment term does not apply, and parties may contract for payment beyond 30 days. See Spada Props., Inc., 121 F. Supp. 3d at 1084–85; Perishable Agricultural Commodities Act: Impact of Post-Default Agreements on Trust Protection Eligibility, 76 Fed. Reg. 20217, 20217–18 (Apr. 12, 2011) (noting that the 2011 amendment to the regulations clarifies "that the 30-day maximum time period for payment for a shipment to which a seller can agree and still qualify for coverage under the trust . . . refers to pre-transaction agreements" and that "if there is a default in payment as defined in the regulations, a seller . . . who has met the PACA trust eligibility requirements" may enter into "a scheduled agreement for payment of the past due amount without foregoing its trust eligibility").

B.

Scott Farms argues that it timely notified Wayne Bailey in writing as required by PACA for the eight pack outs in Invoices #21729 and #21730. On October 27, 2017, Scott Farms sent to Wayne Bailey Invoice #21729 that covered the orange sweet potato pack outs on September 15, 16, 18, and 19, 2017. See [D.E. 1-1] 3; [D.E. 10-2] 1, 3. On October 30, 2017, Scott Farms sent to Wayne Bailey Invoice # 21730 that covered the orange sweet potato pack outs on September 22,

11

September 28, October 3, and October 10, 2017. See [D.E. 1-1] 3; [D.E. 10-2] 1, 4.

The Bankruptcy Court excluded the September 15 and 16, 2017 pack outs totaling $43.365 from PACA protection because it held that Scott Farms did not timely notify Wayne Bailey as to those two packs outs. See [D.E. 1-1] 8–9. In excluding the two pack outs of September 15 and 16, 2017, the Bankruptcy Court noted that the two pack outs occurred more than 40 days before the date on Invoice # 21729;[1] therefore, the Bankruptcy Court held that Scott Farms's notice was untimely. See id.; [D.E. 10-2] 3. Notably, the parties did not agree in writing to a payment term other than PACA's 10-day default payment period, and PACA's regulations state that notice is due within 30 days of the expiration of the 10-day payment period. See 7 C.F.R. §46.46(f)(2)(i); see also 7 C.F.R. § 46.2(aa)(5). The Bankruptcy Court also held that Scott Farms timely notified Wayne Bailey of the six other pack outs on Invoice # 21729 and Invoice # 21730. See [D.E. 1-1] 9.

Scott Farms argues that the Bankruptcy Court erred in excluding as untimely the pack outs for September 15 and September 16, 2017. Specifically, Scott Farms asserts that Wayne Bailey had to notify Scott Farms of the date that it accepted Scott Farms's orange sweet potatoes in the pack outs of September 15 and 16, 2017, and that Wayne Bailey's failure to provide such notice means that the 40-day PACA protection period does not apply to Scott Farms. See [D.E. 15] 23 n.8, 32–35.

The court rejects Scott Farms's argument concerning the pack outs of September 15 and 16, 2017. As Scott Farms concedes, neither PACA nor PACA's regulations require a buyer to notify the seller when it accepts the produce. See [D.E. 15] 35; 7 C.F.R. § 46.46; cf. 7 C.F.R. § 46.2(aa)(5) (defining "full payment promptly" as "within 10 days after the day on which the produce is accepted"). Accordingly, because Scott Farms failed to notify Wayne Bailey that Scott Farms

---

[1] October 26, 2017, is 40 days after September 16, 2017.

12

intended to preserve its PACA trust rights within 40 days of the September 15 and September 16, 2017 pack outs, PACA does not protect those two pack outs. Thus, the Bankruptcy Court properly excluded those two pack outs from PACA protection, and the court affirms the Bankruptcy Court's holding that PACA does not apply to the September 15 and 16, 2017 pack outs.

The court also affirms Bankruptcy Court's conclusion that Invoice #21729 and Invoice #21730 for the orange sweet potatoes otherwise complied with PACA's statutory and regulatory notice requirements. See 7 U.S.C. § 499e(c)(4); 7 C.F.R. § 46.46(f)(4). The invoices were "ordinary and usual" within the meaning of section 499e(c)(4) and contained PACA's required statutory language. See [D.E. 10-2] 3–10; cf. Epic Fresh Produce, LLC v. Olympic Wholesale Produce, Inc., No. 17-cv-8381, 2017 WL 6059971, at *5–7 (N.D. Ill. Dec. 7, 2017) (unpublished).

As for Scott Farms's argument that Wayne Bailey defaulted when it failed to pay Scott Farms within 30 days of the disputed pack outs on September 15, 16, 18, 19, 22, 23, and 28, 2017, and October 3, and 10, 2017, and that any subsequent payments terms were part of a proposed post-default agreement, the Bankruptcy Court found that no post-default agreement concerning payment existed between the parties. See [D.E. 1-1] 6–8. The Bankruptcy Court also stated that "[n]o party introduced evidence that Wayne Bailey knew what amounts it owed Scott Farms until the October 27 and October 30 invoices were delivered." Id. at 7.

Rick Martin, Wayne Bailey's Chief Financial Officer, testified concerning the pack out on September 15, 2017:

> From an accounting standpoint, so these 70 bins would be put into inventory at $21,068. And so counting matching, we know we owe Scott Farms, so we put it into our accounts payable just to make sure you know that we have an accurate tracking of a liability. Even though we don't have an invoice, we know we have a liability.

[D.E. 12] 28–29 (emphasis added). Martin also testified that, based on Wayne Bailey's own internal

13

records, it knew that payments for sweet potatoes packed out on September 15, 16, 18, and 19, 2017, were past due by October 20, 2017, because of the parties' 30-day oral agreement for payment, even though Scott Farms did not send an invoice for those pack outs until October 27, 2017. See id. at 35–37; [D.E. 10-2] 1.

As Martin's testimony made clear, Wayne Bailey maintained internal records, knew what amounts it owed, and considered its own payments to be past due before Scott Farms sent Wayne Bailey an invoice. See [D.E. 12] 35–37. Moreover, the parties set the price per bin of sweet potatoes based on when Wayne Bailey packed out the sweet potatoes, not when Wayne Bailey obtained the sweet potatoes from Scott Farms. See id. at 27–29. Accordingly, under PACA's regulations, Wayne Bailey defaulted 10 days after it accepted Scott Farms's sweet potatoes (i.e., when it packed out the sweet potatoes).[2] Thus, Wayne Bailey was in default as to each sweet potato pack out before Scott Farms sent Invoice #21729 and #21730 to Wayne Bailey.

As for any post-default agreement, the Bankruptcy Court found that the parties entered into "a post-transaction but pre-default agreement" and questioned how the parties could have reached a post-default agreement on November 6, 2017, when the "Net Due November 20, 2017" term appeared on Invoice #21729 and #21730. See [D.E. 1-1] 6 n.1, 7. Scott Farms, however, unilaterally added the proposed payment term of November 20, 2017, to Invoice #21729 and #21730 after Wayne Bailey defaulted, and the payment term was merely a proposal for resolving Wayne

---

[2] The parties orally agreed to a 30-day payment period and did not have a written agreement concerning payment. Under PACA, the parties' oral agreement for a 30-day payment period has no legal effect, but PACA permits Scott Farms to enforce PACA's statutory default 10-day payment period. See Bocchi Ams. Assocs. Inc., 515 F.3d at 390–91; Patterson Frozen Foods, Inc., 307 F.3d at 669; Idahoan Fresh, 157 F.3d at 203–05; Hull Co., 924 F.2d at 782; In re Davis Distribs., Inc., 861 F.2d at 417–18; Classic Harvest LLC, 2017 WL 2350212, at *5–7; Produce All., 776 F. Supp. 2d at 203–10; In re Dixie Produce & Packaging, LLC, 368 B.R. at 536.

14

Bailey's default. See [D.E. 12] 38–39. Moreover, Wayne Bailey understood the term to be a proposed post-default resolution. See id. at 40. Indeed, Scott Farms followed up on the post-default proposal in Invoice #21729 and #21730 with an e-mail dated November 6, 2017, in which Scott Farms repeated the proposed post-default payment date of November 20, 2017, and offered to credit Wayne Bailey's debt based on money that Scott Farms owed to Wayne Bailey for sweet potato plants that it bought from Wayne Bailey. See [D.E. 10-1] 1.

The record is unclear whether Wayne Bailey ever agreed to Scott Farms's offer concerning the proposed post-default payment term "Net Due November 20, 2017." Regardless, Scott Farms preserved its PACA trust protection when it sent its notice of intent to preserve its PACA trust rights in Invoices #21729 and #21730 on October 27 and 30, 2017. Because Scott Farms gave written notice on October 27, 2017, in Invoice #21729 of its intent to preserve its PACA trust rights, the written notice provides PACA protection to Scott Farms back to September 17, 2017. See 7 U.S.C. § 499e(c)(4); 7 C.F.R. §§ 46.2(aa)(5), 46.46(f)(2)(i)–(3); Tanimura & Antle, Inc., 222 F.3d at 136; Hull Co., 924 F.2d at 781–82; Spada Props., Inc., 121 F. Supp. 3d at 1078. Accordingly, PACA protects the pack outs on September 18 and 19, 2017, in Invoice #21729, but not the pack outs of September 15 and 16, 2017.

Similarly, because Scott Farms gave written notice on October 30, 2017, of its intent to preserve its PACA trust rights, the written notice provides PACA protection to Scott Farms back to September 20, 2017. See 7 U.S.C. § 499e(c)(4); 7 C.F.R. §§ 46.2(aa)(5), 46.46(f)(2)(i)–(3); Tanimura & Antle, Inc., 222 F.3d at 136; Hull Co., 924 F.2d at 781–82; Spada Props., Inc., 121 F. Supp. 3d at 1078. Accordingly, PACA protects the pack outs on September 22, September 28, October 3, and October 10, 2017, in Invoice #21730.

Because the proposed payment term was post-default, it does not affect Scott Farms's PACA protection for six of the disputed pack outs. See 7 C.F.R. § 46.46(e)(3); Spada Props., Inc., 121 F. Supp. 3d at 1084–85. Thus, Scott Farms has an additional PACA claim for the pack outs of September 18, 19, 22, and 28, 2017, and October 3 and 10, 2017. See [D.E. 10-1] 12; [D.E. 10-2] 1. Accordingly, the court reverses the Bankruptcy Court's holding that PACA does not apply to the pack outs of September 18, 19, 22, and 28, 2017, and October 3 and 10, 2017.

Finally, Scott Farms argues that the Bankruptcy Court erred in applying the setoff to Scott Farms's PACA claim instead of to Scott Farms's unsecured claim. With respect to the setoff, the Bankruptcy Court applied a setoff of $33,184.00 to the amount that it allowed as Scott Farms's PACA claim (i.e., $39,000.00). See [D.E. 1-1] 2, 11–12.

The court reviews the Bankruptcy Court's decision concerning the setoff for abuse of discretion. See In re Gould, 401 B.R. 415, 421 (B.A.P. 9th Cir. 2009), aff'd, 603 F.3d 1100 (9th Cir. 2010); In re Larbar Corp., 177 F.3d 439, 447 (6th Cir. 1999); In re HAL, Inc., 196 B.R. 159, 161 (B.A.P. 9th Cir. 1996), aff'd, 122 F.3d 851 (9th Cir. 1997); In re Lambert Oil Co., 347 B.R. 508, 521 (W.D. Va. 2006). A bankruptcy court abuses its discretion "if it bases its decision on an erroneous view of the law or clearly erroneous factual findings." In re Gould, 401 B.R. at 429 (quotation omitted).

"The right of setoff . . . allows entities that owe each other money to apply their mutual debts against each other . . . ." Citizens Bank of Md. v. Strumpf, 516 U.S. 16, 18 (1995). The Bankruptcy Code does not create a federal right to setoff. See id. Nevertheless, 11 U.S.C. § 553 "provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." Id.; see 11 U.S.C. § 553(a).

16

PACA assets are held in trust and sellers retain an equitable interest in the PACA trust pending payment. See Genecco Produce Inc., 913 F.3d at 276. Therefore, PACA assets are excluded from the bankruptcy estate and trust principles apply. See id.; S & H Packing & Sales Co. v. Tanimura Distrib., Inc., 883 F.3d 797, 803 (9th Cir. 2018) (en banc); Nickey Gregory Co., 597 F.3d at 595. Thus, the court applies the setoff to Scott Farms's unsecured claim for the pack outs of September 15 and 16, 2017, but not to its PACA claim. See Genecco Produce Inc., 913 F.3d at 276 ("To permit a bankruptcy offset against PACA Trust assets would be inconsistent with Congress's intent in amending PACA in 1984 . . . ."). Accordingly, the court reverses the Bankruptcy Court's holding that the setoff applies to Scott Farms's PACA claim.

IV.

In sum, the court AFFIRMS the Bankruptcy Court's holding that PACA does not apply to the pack outs that occurred on September 15 and 16, 2017, REVERSES the Bankruptcy Court's holding that PACA does not apply to the pack outs that occurred on September 18, 19, 22, and 28, 2017, and October 3 and 10, 2017, and REVERSES the Bankruptcy Court's determination that the setoffs apply to Scott Farms's PACA claim. The setoffs apply only to Scott Farms's unsecured claim. The court REMANDS the case to the Bankruptcy Court for further proceedings consistent with this opinion.

SO ORDERED. This 27 day of September 2019.

JAMES C. DEVER III
United States District Judge